## SUPREME COURT.

### Ann W. Townsend agt. Platt C. Ingersoll.

Where payments are made upon a promissory note, given by the defendant to the intestate in his life time, to his *widow* having possession of the note, *before* letters of administration are granted to her, on the granting of such letters subsequently to her, the doctrine of *relation*, from the death of the intestate confirms her acts made for the benefit of the estate and renders the payments thus made a *new promise* and takes the note out of the *statute of limitations.*

*Second Judicial Department, Brooklyn General Term, May,* 1872.

*Before* J. F. Barnard, *P. J.,* J. W. Gilbert *and* A. B. Tappen, *JJ.*

Appeal by defendant from judgment for plaintiff entered upon report of referee. The facts will appear in the referee's report, which is as follows :

*To the Supreme Court :* This cause having been, by order of this court, made April 3d, 1871, referred to me to hear and determine, I respectfully report :

That I have been attended by the parties, heard and considered their testimony, and find and decide as follows :

As matters of fact, that defendant, on the 29th day of June, 1854, made his promissory note in writing, in the words and figures following, to wit :

$500                         Elmira, June 29, 1854.

Six months from date, for value received, I promise to pay Thomas Townsend, or order, five hundred dollars, with use, on settlement to date, for Coryle Extract, &c.   P. C. Ingersoll.

and delivered the same to the said Thomas Townsend.

That thereafter, and on or about the 18th day of October,

1868, the said Thomas Townsend died intestate, and that on the 24th day of October, 1870, letters of administration were granted by the surrogate of the county of New York upon his estate to the plaintiff, who duly qualified as such administratrix.

That on the date following, the following sums were paid by defendant upon the said note to the plaintiff:

On the 22d day of January, 1869, $10; on the 1st day of March, 1869, $15 50; on the 7th day of June, 1869; $13; on the 11th day of August, 1869, $5; on the 2d day of September, 1869, $2. In all amounting to the sum of $45 50, which, with interest thereupon to the date of this my report, amounting to eight dollars and fifty cents should be credited to defendant upon said note, and that no other payment have been made by defendant upon said note.

That said note was not given by defendant to said Thomas Townsend, deceased, as collateral security for any debt due by O. S. Gregory and defendant as copartners, or said Gregory to said Townsend, or as collateral security for the performance of any agreement upon the part of said Gregory.

That no evidence has been adduced or testimony offered before me in support of the counter-claim set up in the answer.

As a conclusion of law from the foregoing facts, I find and decide, there is due to the plaintiff from the defendant upon said note the sum of five hundred dollars, with interest thereon, from the 20th day of November, 1864, amounting to two hundred and thirty-nine 75-100 dollars, making for principle and interest the sum of seven hundred and thirty-nine 75-100 dollars less the sum of fifty-four dollars paid as aforesaid by defendant on said note, leaving a balance due by said defendant to plaintiff of six hundred and eighty-five dollars and seventy-five cents, for which sum plaintiff is entitled to judgment, with costs of this action.

September 2, 1871.  FREDERICK A. WARD,
*Referee.*

HENRY S. BELLOWS, *for defendant, appellant,*

Cited and relied on 9 *N. Y.*, 85 ; and 8 *N. Y.*, 362.

ANDREW GILHOOLY, *for plaintiff, respondent.*

(*a.*) Each of the new contracts having been made with the plaintiff, the widow of the intestate, who had possession of the note in suit, and was acting on behalf of the intestate's estate, for its benefit, before letters granted, her letters of administration will relate back in order that the estate may not lose the benefit of the contract, and thus enable the plaintiff to sue upon it in her representative capacity (*Bodger* agt. *Arch*, 10 *Exch.*, 333 ; *Williams on Exrs.*, 557, *Lond. Ed.*, 1866).

The distinction between the time of the vesting of the title of an executor and that of an administrator has become of no practical importance, for it is now settled beyond all question that the title of the administrator, after his appointment vests from or relates back to the death of the intestate (3 *Redf. on Wills*, 127)

Thus the administrator may recover against a wrongdoer, who has seized or converted the goods of the intestate, before letters granted, in an action of trover (*Com. Dig. Administration B.* 10 ; 18 *Vin. Abr.*, 285 ; *Rockwell* agt. *Saunders*, 19 *Barb.*, 473).

Or, he may bring trespass, although this is an action founded on the right to possession.

" The relation fixes the possession from the beginning" (2 *Roll. Abr.*, 554, *Tit. Trespass, pl.* 2 ; *Year Book*, 26 *Hen.*, 6, 8 ; *Tharpe* agt. *Stallwood*, 5 *Man. & Gr.*, 760)

The ancient reason for this relation was, that " otherwise there would be no remedy" (*Per* ROLLE, *Ch. J., Long* agt. *Hebb, Style*, 341, A.D., 1652).

The principle, as deduced from the latter cases, stands upon a broader and more symmetrical basis, viz. : " The

title of an administrator relates back to the death of the intestate, for the purpose of supporting the rights of the intestate, and of ratifying acts for the benefit of his estate, and giving a remedy where otherwise there would be none; but not to affect the rights of third persons to the estate vested intermediate the death and letters granted, or to take away those of the intestate, according to the maxim, '*in fictione juris semper consistit equitas*' " (*Leber* agt. *Kauffelt*, 5 *Watts & Sar.*, 440, 5).

In the case last cited, one who has paid a claim against an intestate's estate, and afterwards took out letters of administration, was held entitled to sue, in his representative capacity, on a bond given to the intestate to indemnify him against that claim.

So where a note belonging to the estate of an intestate was paid to his widow, who subsequently united with another in taking out letters of administration, and they then brought an action on the note in their representative capacity, the letters were held to relate back and render the payment to the widow, a bar to the action (*Priest* agt. *Watkins*, 2 *Hill*, 225).

While there are certain cases in which the doctrine of relation has not been allowed, yet they will be found to be those in which the fiction is set up to divest some right of a third person to the estate which vested intermediate the death of the intestate and letters granted, as *Gilb. Eq.*, 223 or to prejudice the right of the intestate, as *Morgan* agt. *Thomas*, (8 *Exch.*, 302); *Murray* agt. *East India Co.*, (5 *Barn & Al.*, 204); *Pratt* agt. *Swaine*, (8 *B. & C.*); *Steward* agt. *Edmond's*, (1 *Wms. Exrs.*, 4th ed. 834, note u); *Parsons* agt. *Maijesden*, (*Freeman*, 151).

The New York decisions proceed on the doctrine of the earlier English cases, and of *Williams* agt. *Norwith*, (*Style*, 337), and hold that the grant of letters of administration relates back to the death of the intestate, and legalizes all intermediate acts of the administratrix *ab initio*, whether

beneficial to the estate or otherwise, in the absence of fraud or collusion (*Vroom* agt. *Van Horne*, 10 *Paige*, 549, 558; *Rattoon* agt. *Overacker*, 8 *Johns.*, 226)

*(b.)* Even if the payments on account of the defendant's indebtedness to the intestate had been made by the defendant to a third person holding the note, and been received as such, under the same circumstances as those of January 22, 1869, and August 11, 1869, were made, the act of such third person could have been ratified by the plaintiff after letters granted, and the new promise, raised by the payments, been rendered available to the plaintiff as administratrix.

The act would have been ratified by making a legal demand for the benefit of the contract thus made, by bringing suit (1 *Am. Lead. Cas.*, *Hare & W. notes*, 593), and where one means to act as agent for another a subsequent ratification by the other is always equivalent to a prior command; nor is it any objection that the intended principal was unknown at the time (*Hull* agt. *Pickersgill*, 1 *Brod. & Bing.*, 282; *Foster* agt. *Bates*, 12 *M & W.*, 226).

So where one received sums of money from an intestate's debtors' the subsequently appointed administratrix was held entitled to waive the tort, ratify the receipt of the money and recover the same in an action for money had and received to her use as administratrix (*Welchman* agt. *Sturgis*, 13 *Q. B.*, 552).

The administrator may ratify a contract made by procuration, or in any other form, before his appointment on behalf of the estate, so as to take the benefit of it, the same as if his authority had been of a date anterior (3 *Redf. on Wills.*, 127).

*(c.)* The provisions of the Revised Satutes (2 *R. S.*, 81, § 60, and *Id.*, 449, § 17), were not intended to work any alteration in the common law in respect to the doctrine of the relation of letters of administration (*Priest* agt. *Watkins*, 2 *Hill*, 226).

At common law if one who was neither executor or ad-

ministrator intermeddled with the goods of the deceased, or did any act characteristic of the office of executor, he thereby made himself an executor of his own wrong or *de son tort* (*Swinburne, part* 4, § 23, *pl.* 1 ; *Godolph, part* 2, *ch.* 8 § 1 ; *Wentworth, Off. Exrs.,* 14*th ed. ch.,* 14, *p.* 320).

When one so acted as to become executor *de son tort* he thereby rendered himself liable not only to an action by the rightful executor or administrator, but also to be used as executor by the creditor of the deceased or by a legatee, for an executor *de son tort* had all the liabilities though none of the privileges, that belong to the character of executor *( Carmichael* agt. *Carmichael,* 1 `Phil. E. C.,* 103, *per* Lord COTTENHAM ; *Williams on Exrs.,* 217 ; 2 *Blacks. Com.* 495.)

He could not bring an action himself in the right of the deceased (*Bro. Abr. Tit. Administration,* 8), so that even at common law the plaintiff in this action could not be heard as executrix *de son tort.*

He was chargeable with the debts of the deceased, so far as assets came to his hands (*Dyer,* 166), and as against creditors in general was allowed all payments made to any other creditor (1 *Ch. Ca.,* 33), himself excepted (5 *Rep.* 30, *Moore,* 527).

By statute, (2 *R. L., p.* 313, § 13, copied from 43 *Eliz., Ch* 8, 1 *Chitty St.,* 3*d ed.,* 1416), an executor of his own wrong was declared liable for all assets coming to his hands, with the privilege of retaining for debts due him from the intestate, and of being allowed for all proper payments made by him. 2 *R. S.,* 81, § 60, deprived him of this statutory privilege.

2 R. S., 449, § 17, abolished the common law liability, and rendered him responsible as a wrongdoer to the lawful representative of the estate.

. The sole intention was manifestly to alter the theory of the liability of third persons to the rightful executor or administrator for their wrongful acts, and to restrict this liability to such executor or administrator, as trustee not only of the

intestate, but also for creditors. It was not to deprive the rightful representative of his common law right to avail himself of acts done or contracts made on behalf of the estate for its benefit.

*By the court,* BARNARD, *P. J.*—The payment made by defendant upon the note in question to the plaintiff before she had taken out letters of administration on the estate of her husband, was a good payment to her as administratrix, she subsequently having taken out letters. She had possession of the note, and the payment was for the benefit of the estate, and all her acts are confirmed, for the benefit of the estate from the time of the death of her husband, by relation.

The evidence fully sustains the referee in his finding, that the note was not given by defendant to deceased as collateral security for any debt due from O. S. Gregory and defendant as partners, or for a debt due deceased from Gregory, or as collateral security for the performance of any agreement upon the part of said Gregory.

The judgment should be affirmed, with costs.